BURT DEVEAU, complainant,

*v.*

PIROZZI CONSTRUCTION CORPORATION, defendant.

[Submitted October 29th, 1931. Decided February 1, 1932.]

*Messrs. Henn & Burr,* for the appellant.

*Mr. Max H. Herbstman,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The controverted matters raised on this appeal relate to exceptions to the "final account" of the receiver of an insolvent corporation, and the allowance of fees to the receiver and his counsel which are claimed to be excessive and unwarranted.

The Pirozzi Construction Corporation in 1929 was the owner of four adjoining lots in a residential section of Essex county, which lots are sufficiently described for present purposes as Nos. 125, 126, 127 and 128. The last three were unimproved. On lot 125, which is now particularly in question, a dwelling house was under construction but was incomplete, and required further outlay of about $4,000 to complete it.

Each of the four lots was subject to a mortgage of $3,432 and these four mortgages were held by appellant Sullivan.

In addition, the four lots together were subject to a blanket mortgage of $2,472 with release privilege.

The house on lot 125 was being built under filed contract; but notwithstanding this, several lien claims were also on file.

There was also a construction mortgage on lot 125 whose face amount was $10,000, held by a loaning corporation, but only $3,000 had been advanced thereon.

Sullivan, the holder of the mortgage for $3,432 on lot 125, had executed an agreement subordinating his mortgage to the construction mortgage, but claimed that the subordination was invalid because the consideration therefor had failed.

The Pirozzi corporation had run out of money, work on the house was at a standstill, and the building was partially open to the weather.

In October, 1929, Sullivan filed bill to foreclose his mortgage, bringing in the usual parties and also attacking the priority of the construction mortgage.

In this posture of affairs, the complainant, DeVeau, who claimed $475 for carpenter work done on the building, filed an insolvency bill against the Pirozzi corporation on November 29th, 1929, and a receiver of the corporation was appointed and continued; the receiver was authorized to employ counsel, and did so. Later the first receiver was removed and David Weinick, a counselor-at-law of this state, was substituted. Notwithstanding his legal qualifications, the second receiver petitioned for the appointment of the same counsel, and the prayer was granted. Appraisals of the property, particularly of the unfinished house were obtained and ran from $15,000 to $18,000, or under favorable conditions, $20,000, after spending $4,000 to complete. Apparently there were no other assets than the three vacant lots and the incomplete house and its lot. Receiver Weinick, before assignment of counsel, reported in favor of selling the vacant lots, and recommended the completion of the house before selling that. Nothing seems to have come of that report. Six weeks later a second report stated that all the liens were disputed; that the Sullivan foreclosure was in progress but that the priorities were not yet determined and recommended sale of "the aforesaid property" free from all liens, evidently pursuant to section 81 of the Corporation act. *Comp. Stat. p. 1649.* The court ordered a sale free of liens, but confined it to the house, doubtless because that was the only part of the real estate likely to "deteriorate in value." At all events, the receiver was directed to sell only the house, and did so, striking it off at a bid of $7,000, which was approved by the court, and the purchase price collected with some difficulty.

It does not appear that anything further was done to close out the remaining assets of the company. The receiver submitted a "final account" showing merely the receipt of the

$7,000 and the payment of some incidental expenses, leaving a balance of $6,823.51 in his hands, which was ordered to be paid into court to await the adjudication of priorities in the appellant Sullivan's foreclosure suit. Exceptions to the account were overruled, and the account confirmed. The court made an allowance of $750 to the receiver and $750 to his counsel, and the receiver was thereupon "discharged from all obligations in relation to said trust, except as to any money which may hereafter come to his hands as such receiver."

As to the exceptions to the receiver's account, we have examined them and conclude that there is no substantial merit in any of them. The first is that the report does not set forth the liens and priorities. But this was impracticable at the time, as they were in process of adjudication in the foreclosure suit. The second challenges the expenses of advertising as including the cost of an erroneous advertisement. This appears to be untrue in fact. The third, objecting to pay of a watchman, is not argued. The fourth, objecting to cost of doors ordered by the first receiver and paid by the second receiver is argued on the theory that the latter was not entitled to pay obligations incurred by the former. If they were proper to be incurred, and this does not seem to be denied, we can see no objection to paying them out of the fund collected by the second receiver, nor to the court of chancery approving such payment. The fifth exception is that "the receiver has not attached to [his account] nor are there any vouchers on file showing the payments made by the receiver." The account was referred to a special master for audit, and he duly reported that he had made such audit, and that vouchers for disbursements had been produced before him. The account of the receiver was on file with the sergeant-at-arms open to inspection, and all parties had notice of that fact and that the audit was to take place and who was to make it. We know of no rule that requires the vouchers to be attached to the account or to remain on file. As a practical matter, there are only seven items of disbursement, the largest being $50, and consisting of premium on receiver's bond, cost of approving same, pay

of watchman, three items of advertising, and costs of the doors already discussed. Such an account, as observed by Chancellor Walker in *Conover* v. *West Jersey Mortgage Co., 96 N. J. Eq. 441* (at *p. 455*), does not require the formalities requisite in a case of long and involved accounts.

The ground of appeal challenging the allowance of $25 to the special master for auditing the account does not seem to be argued.

This leaves for consideration the awards to the receiver and his counsel, and we agree with the appellant that both are excessive and unwarranted in view of the conditions existing at the time. If the owner of the property had been an individual, there would have been no administration suit at all. Granting the propriety of appointing a receiver, it is difficult to see what justification there could have been for such a receiver, on discovering an unfinished house and three vacant lots plastered with mortgages, and the house under foreclosure in a suit wherein the priorities must normally be settled, to recommend to the court a sale of the house in the administration proceeding which could as well, if not better, be ordered *pendente lite* in the foreclosure on precisely similar grounds (Chancery act, *Comp. Stat. p. 433* § *62; Riverside Apartment Corp.* v. *Capitol Construction Co., 107 N. J. Eq. 405,* Nos. 34, 35, 36 of the present term of this court), and in the improbable contingency of a surplus over the secured claims being realized would create a fund to which the receiver would be entitled and to which the unsecured creditors could resort. In short, all that the receiver did was to sell what should have been sold in the foreclosure. He did not sell the extra lots: apparently he made no attempt to sell them, though of course he might have sold subject to encumbrances under the general powers conferred by statute. *Comp. Stat. p. 1643* § *65.* The equity in the three vacant lots, whatever it may be, appears to have been abandoned to its fate. The net result is that the court of chancery has awarded $1,500 out of $7,000 for substantially nothing except an examination into the conditions and the conduct of a sale of one asset which would have been had

in the foreclosure, and could have been had at an expense insignificant in comparison.

Our conclusion is that under the circumstances an allowance of $250 for the receiver and $150 for his counsel is all that should have been awarded. It is argued, and with force, that as the receiver was himself a trained lawyer, no counsel was needed and none should have been appointed. We do not feel justified in going to this length, but are clear that the awards we have indicated are all that should have been made under the circumstances. With this modification; the decree brought up will be affirmed.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 15.